# IN THE UNITED STATES DISTRICT COURT
# FOR MIDDLE DISTRICT OF FLORIDA

---------------------------------------------X
:
SAMUEL J. BERNGARD and LIBBY, : Case No. 2:11-cv-177-FtM—29DNF
A. BERNGARD, individually :
and as trustees and beneficiaries of the : **AMENDED COMPLAINT**
SAMUEL J. BERNGARD DDS :
PC DEFINED BENEFIT PLAN and the :
SAMUEL J. BERNGARD DDS PC : **JURY TRIAL DEMANDED**
PROFIT SHARING PLAN,  PAUL :
BERNGARD,  BROOKE BERNGARD, :
ALEXIS  BERNGARD, and CAPETOWN :
HOLDINGS, LLC, :
:
    Plaintiffs, :
:
vs. :
:
FISHER ASSET MANAGEMENT, LLC, :
d/b/a FISHER INVESTMENTS, :
:
    Defendant. :
---------------------------------------------X

    Plaintiffs, by and through their undersigned counsel, allege upon knowledge as to matters relating to themselves and upon information and belief as to all other matters as follows:

## THE PARTIES

    1.    Plaintiff Samuel J. Berngard ("Dr. Berngard") and Libby A. Berngard ("Mrs. Berngard") are natural persons residing in Cape Coral, Florida and are citizens of the State of Florida.  Dr. and Mrs. Berngard were at relevant times the beneficial owners of IRAs (Charles Schwab Accounts Nos. 4037-9575 (Dr. Berngard) and 5084-0111 (Mrs. Berngard)) managed by defendant Fisher (as defined below).

    2.    Plaintiffs Samuel J. Berngard and Libby A. Berngard are the Trustees of Samuel J. Berngard DDS PC Defined Benefit Plan and Samuel J. Berngard DDS PC Profit Sharing Plan

(hereinafter referred to as the "Plans"), employee benefit plans established in connection with Dr. Berngard's former dental practice. Dr. and Mrs. Berngard are also the beneficial owners of the assets held in the Plans and are the only remaining beneficiaries of the Plans. The Plans at relevant times maintained accounts (Charles Schwab Accounts Nos. 7767-3729, 8094-3561, and 9102-5549) managed by defendant Fisher (as defined below).

3.      Paul Berngard, a natural person residing in Boynton Beach, FL, Brooke Berngard, a natural person residing in Fort Lauderdale, FL, and Alexis Berngard, a natural person residing in Cape Coral, FL, are the adult children of Dr. and Mrs. Berngard. Paul, Brooke and Alexis Berngard are all citizens of the State of Florida. Paul, Brooke and Alexis Berngard were at relevant times the beneficial owners of Roth IRAs (Charles Schwab Accounts Nos. 1541-5739 (Paul) 4192-0873 (Brooke) and 1541-5675 (Alexis)) managed by defendant Fisher (as defined below).

4.      Plaintiff Cape Town Holdings, LLC f/k/a Berngard Family Investments, LLC ("Cape Town Holdings") is a limited liability corporation organized and existing under the laws of the State of Michigan that Mr. and Mrs. Berngard established for estate planning purposes. Cape Town Holdings at relevant times maintained an account (Charles Schwab Account No. 8091-4911) managed by defendant Fisher (as defined below). Dr. and Mrs. Berngard, citizens of the State of Florida, are the only members of Cape Town Holdings. Cape Town Holdings is therefore a citizen of the State of Florida.

5.      Defendant Fisher Asset Management, LLC, d/b/a Fisher Investments ("Fisher" or "defendant"), is a limited liability company organized and existing under the laws of the State of Delaware. Defendant Fisher's principal office is located at 13100 Skyline Boulevard, Woodside, San Mateo County, California, 94062. Defendant Fisher is engaged in investment advisory business in Florida as well as many other states around the country. Fisher's Form ADV filed

2

with the SEC is annexed hereto as Exhibit 1. Fisher's only member is Fisher Investments, Inc., a Delaware corporation having its principal place of business at 13100 Skyline Boulevard, Woodside, San Mateo County, California, 94062. Fisher Investments, Inc., is therefore a citizen of both Delaware and California. See 28 U.S.C. § 1332(c)(1).

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 as there is complete diversity of citizenship of the parties and the amount in controversy is in excess of $75,000, which exceeds the statutory requirement for diversity actions. All plaintiffs are citizens of Florida and defendant is a resident of the state of citizenship of its sole member, Fisher Investments, Inc., which is a citizen of both Delaware and California. See Par. 5, immediately above.

7.      Pursuant to 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the acts, transactions, and courses of conduct giving rise to the violations alleged in the Complaint occurred in the Middle District of Florida. Moreover, defendant regularly administers and maintains accounts on behalf of Florida residents and directly or indirectly, singly or in concert with others, made use of the means or instrumentalities of interstate commerce, or the mails.

## DEFENDANT'S UNLAWFUL COURSE OF CONDUCT

8.      This is a case of a classic bait and switch. Rather than receiving the customized investment plan they paid for, plaintiffs were placed in defendant's "one size fits all" investment scheme which was completely unsuitable and entirely misrepresented to them. Specifically, the Berngards are retirees who entrusted a large portion of their life savings to Fisher and were relying on the assets managed by Fisher to provide income during their retirement. Therefore,

Dr. and Mrs. Berngard were very concerned that their money be managed in a manner that would provide a reasonable level of return while minimizing the risk of the loss of any substantial portion of their principal.  At relevant times Dr. Berngard advised Fisher that the Berngards would be satisfied with an average rate of return of five percent (5%).

9. Although Fisher, which is a registered investment advisor charged with a fiduciary standard for its clients, promised an individualized investment plan for the Berngards, which would take into account their status as retirees focused on principal preservation, Fisher did nothing more than place plaintiffs in a "one size fits all" investment regimen which followed Fisher's general investment plan.

10. With its full discretionary authority, Fisher completely ignored bonds or other fixed income assets, even though plaintiffs would need to draw an income from their accounts. Rather, almost all of plaintiffs' assets were placed at great risk in the stock market.  Ultimately, this risky strategy, which was completely unsuitable for plaintiffs, backfired.

11. When the broad stock market indices plummeted in 2008 and early 2009, the value of plaintiffs' accounts, which were almost completely invested in stocks or Fisher funds containing stocks, lost approximately $1,200,000.

12. Despite its "one size fits all" approach, Fisher repeatedly touted tailoring a client's investments to their particular needs, emphasizing consideration on the client's unique circumstances in designing a portfolio strategy.  Specifically, according to the Fisher's Client Owner's Manual:

> Your Investment Counselor will be your main point of contact, serving as a
> liaison between you and the Investment Policy Committee (IPC).  Your IC will
> first evaluate your investment objectives, including your time horizon and income
> needs, and relay any relevant unusual requirement to the IPC for consideration in
> their management of your portfolio.  He/she will discuss our recommendations
> with you prior to strategy implementation.  Thereafter your Investment Counselor

4

will monitor your account and keep you informed of the IPC's thinking, as well as process any change in your financial circumstances. Your IC will provide service personalized to your preferences, and will be available to answer portfolio or market related questions in a much detail as you prefer

13.   Fisher also touted its supposed "individualized" tailoring of client portfolios in a marketing pamphlet entitled "Wealth Management Guide" that Fisher provided to plaintiffs, as follows:

> At Fisher investments, each client has a team of contacts who personally known them and their investment profile. You keep us current on what's going on in your life, and we will manage your investments in a way we believe is best for you **based on your circumstances**, both for now and into the future. We constantly evaluate your portfolio, bearing in mind such key indicators as **your time horizon, your objectives, the sectors or stocks want to keep or avoid, the capital gains implications of each of your positions, your need for immediate access to your assets, and how involved or removed you want to be from the day-to-day details of managing your account.** Your individual questions will be discussed with your personal Investment Counselor, who will stay in contact with you regarding any important developments in your account. Your Investment Counselor will discuss and understand your needs and is available to keep you abreast of the latest thinking from Ken Fisher and the rest of the Investment Policy Committee (IPC) on the markets and your portfolio. The firm utilizes proprietary portfolio management software, as well as other investment technology infrastructure, all designed to implement **individual** portfolios consistent with the IPC's view and your needs.

[Emphasis supplied].

14.   In evaluating and providing a purported individualized plan, as represented above, Fisher had a duty to know and understand plaintiffs' overall financial circumstances, risk tolerance and goals and tailor its management of plaintiffs' accounts accordingly. Although it promised to do so, and went through the motions of taking steps to ascertain plaintiffs' overall circumstances, including in a personal meeting with Fisher salesman Clif Citrano at Dr. and Mrs. Berngard's residence in or about late 2007 at which Citrano asked the Berngards numerous questions about their overall financial circumstances, risk tolerance, and goals, Fisher never actually tailored plaintiffs' portfolio to match plaintiffs' overall circumstances and expressed

5

goals and risk tolerance.

15. In addition to managing discretionary accounts (like the account at issue in this arbitration proceeding), Fisher also manages several mutual funds. For instance, Fisher manages the Purisima Total Return fund (PURIX). At the recommendation of Aaron Kessler at Fisher, plaintiffs placed their IRA accounts in the Purisima Total Return Fund because the assets in the IRA accounts were too small to qualify for Fisher's managed account program. In reality, the IRAs and plaintiffs' other accounts were managed in essentially the same manner-- Fisher only purchased stocks and funds containing stocks, completely ignoring other asset classes.

16. As a result of Fisher's misrepresentations and omissions, breaches of fiduciary duty, and gross mismanagement of plaintiffs' accounts, plaintiffs have incurred substantial investment losses. Plaintiffs now bring this action for compensatory damages, rescission of their investments, and other relief as further set forth below.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION
### FOR BREACH OF FIDUCIARY DUTY

17. Plaintiffs repeat and reallege each of their previous allegations as though fully set forth herein.

18. Defendant is a person who, for compensation, engages in the business of advising others as to investing in, purchasing and selling securities. Defendant acted as an agent of and fiduciary to plaintiffs and owed fiduciary duties to plaintiffs under both state and federal law, including without limitation duties of care, candor and loyalty of the highest good faith and fair dealing.

19. Specifically, the Investment Advisors Act of 1940, 15 U.S.C.A. §§ 80b-1 through

80b-21, and the rules thereunder, impose a fiduciary duty on investment advisors, by operation of law.  As a fiduciary, an investment advisor owes its clients more than honesty and good faith alone.  Rather, an investment advisor has an affirmative duty of utmost good faith to act solely in the best interests of the client and to make full and fair disclosure of all material facts.  Pursuant to this duty, an investment advisor must at all times act in its client's best interests, and its conduct will be measured against a higher standard of conduct than that used for mere commercial transactions.

20. In particular, an advisor must be sensitive to the possibility of rendering less than disinterested advice, whether consciously or unconsciously, and an advisor may be faulted even where it did not intend to injure a client.

21. The SEC has also articulated other specific obligations that arise from an investment advisor's fiduciary obligations, including among others:

    a. A duty to ensure that its investment advice is suitable to the client's objectives, needs, and circumstances. <u>In Re John G. Kinnard and Co.</u>, SEC No-Action Letter, 1973 WL 11848, Fed. Sec. L. Rep. (CCH) 179,662 (Nov 30, 1973);

    b. A duty to be loyal to its clients. See <u>Investment Advisor's Act Release Nos. 40,</u> 1945 WL 5321 (Feb 5, 1945). and 232, 1968 WL 4015 (Oct 16, 1968); and,

    c. A duty to seek the best possible return for a client, consistent with that client's investment objectives. SEC Inspection Manual, at 44.

22. Further, in light of the relationship of trust and confidence between plaintiffs and defendant, defendant owed fiduciary duties to plaintiffs under the common law.  Defendant owed plaintiffs duties of care, candor and loyalty of the highest good faith and fair dealing. Additionally, as plaintiff's agent, defendant owed plaintiffs a duty to disclose to plaintiffs all

7

facts material to defendant's management of plaintiffs' accounts.

23. In light of Fisher's full discretion over plaintiffs' accounts, defendant, like a trustee, is held to rigorous duties of loyalty and care and must avoid acts that put its interests in conflict with its beneficiaries, exercise its duties with the utmost good faith and integrity and employ such skill and judgment as might reasonably be expected of persons skilled in the securities industry.

24. Defendant breached its fiduciary duties to the plaintiffs by virtue of the conduct and omissions alleged herein, including, but not limited to:

    a. Investing plaintiffs' funds in investments that were unsuitable in light of their stated financial circumstances, investment goals and risk tolerance;

    b. not managing plaintiff's account consistent with the investment philosophy and personalized portfolio management approach that Fisher represented that it would employ;

    c. misrepresenting to plaintiffs that their accounts would be managed in a personalized or customized manner consistent with their risk tolerance, goals and life circumstances; and

    d. failing to disclose to plaintiffs that Fisher managed most or all customer accounts in essentially the same manner and heavily or exclusively over-concentrated customers' accounts in stocks and funds containing stocks.

25. As a direct and proximate result of such unlawful conduct, omissions and breach of fiduciary duty, plaintiffs have suffered money damages based on the injury to their property, loss of future income, and other general and specific damages.

## AS AND FOR A SECOND CAUSE OF ACTION

## FOR BREACH OF CONTRACT AND PROFESSIONAL MALPRACTICE UNDER COMMON LAW

26. Plaintiffs repeat and reallege each and every allegation above as though fully set forth herein.

27. Plaintiff entered into a professional service arrangement with defendant to develop and manage plaintiffs' investment portfolio, and granted defendant sole discretion over managing plaintiffs' accounts.

28. In undertaking its contract performance, defendant represented to plaintiffs that Fisher was skilled and experienced as a financial advisor and would prudently manage plaintiffs' investments. See ¶¶ 12-14 supra. As a person holding itself out to be a professional investment advisor, defendant Fisher had a duty to plaintiffs to use the degree of care, knowledge and skill ordinarily possessed by professional investment advisors.

29. Plaintiffs paid defendant the fees charged in accordance with their arrangement.

30. Defendant was required to perform under the arrangement in good faith and in accordance with professional standards and applicable regulations.

31. Plaintiff reasonably relied upon defendant to use the degree of care, knowledge and skill required of professional investment advisors.

32. Defendant breached the professional service arrangement and failed to satisfy professional standards of care by virtue of the conduct and omissions alleged herein.

33. Plaintiffs were injured by defendant's breach of contract and professional malpractice.

9

## AS AND FOR A THIRD CAUSE OF ACTION

### (FOR VIOLATION OF FLORIDA STATUTE § 517.301 AND/OR ANY AND ALL OTHER APPLICABLE STATE STATUTES)

34.  Plaintiffs repeat and reallege each and every allegation above as though fully set forth herein

35.  In connection with the purchase and acquisition of the investments that defendant purchased for plaintiffs' accounts and investment advice provided to plaintiff, defendant:

    a.  employed a device, artifice or scheme to defraud plaintiffs, to wit, knowingly, recklessly or negligently engaged in acts, transactions, practices and courses of business that operated as a fraud upon plaintiffs in violation of Florida Statutes § 517.301(1)(a)1; and

    b.  obtained money or property by means of an untrue statement of a material fact or omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, in violation of Florida Statutes § 517.301(1)(a)2.

36.  Defendant knowingly and intentionally made misrepresentations and omissions of material fact, to plaintiffs as set forth above

37.  Defendant defrauded plaintiffs by engaging in the deceitful and fraudulent conduct set forth above through a device, scheme and artifice in violation of Florida Statute § 517.301(l)(a)-(c).

38.  As herein described, defendant and/or its current and former agents also violated provisions of the California state securities statutes, including Cal. Corp. Code § 25000 <u>et seq.</u>, Plaintiffs therefore seek all relief which may be available to them under such legislation, including rescission and/or damages.

39.  As a direct and proximate cause of defendant's violations, plaintiffs were

damaged.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment as follows:

    A.    Awarding plaintiffs compensatory damages against defendant, including disgorgement of all unjust enrichment, in an amount to be determined at trial, and/or rescinding plaintiffs' purchases of unsuitable securities;

    B.    Awarding plaintiffs a sum equal to their lost profits and income as the result of defendant's failure to properly manage their account;

    C.    Granting prejudgment interest on any award in favor of plaintiffs;

    D.    Awarding plaintiffs their fees and costs herein, including their actual attorney's fees; and

    E.    Granting plaintiffs such other and further relief as to the Court may seem just and proper.

Dated: Naples, FL

June 20, 2011

                      THE PEARL LAW FIRM, P.A.

                      _____

                      By: Robert J. Pearl
                      7400 Tamiami Trail North
                      Naples, FL 34108
                      (239) 653-9330
                      (239) 653-9377 (fax)
                      robert@investorattorneys.com

                      LAW OFFICE OF
                      CHRISTOPHER J. GRAY, P.C.
                      Christopher J. Gray (*Pro Hac Vice*)
                      460 Park Avenue, 21st Floor
                      New York, New York 10022
                      (212) 838-3221
                      (212) 937-3139 (fax)
                      chris@investorlawyers.net

                      Counsel for Plaintiffs

TO:
Defendant Fisher Asset Management, LLC
c/o Mauricio S. Beugelmans, Esq.
Hand Baldachin Amburgey LLP
8 West 40th Street, 12th Floor
New York, New York 10018


CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on June 20, 2011 I electronically filed the foregoing Amended Complaint with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel or pro se parties of record.


                      /s/ Robert J. Pearl